■ In the Matter of the Claim of LILLIE MANGUM, Claimant, v NATIONAL UNION FIRE INSURANCE COMPANY et al., Appellants, and HEALTH FORCE OF NEW YORK CORPORATION et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [789 NYS2d 750]—

Lahtinen, J. Appeal from that part of a decision of the Workers' Compensation Board, filed July 29, 2003, which ruled that AIG Claims Services, Inc. was estopped from denying coverage as of the date of injury.

Claimant, an employee of Health Force of New York Corporation, was injured while driving to her place of employment on July 11, 2000. She immediately applied for disability benefits with her employer's disability benefits carrier, CNA Insurance Company. Her application was rejected because CNA concluded, among other things, that any disability she may have suffered arose out of and in the course of her employment. CNA suggested that claimant file a claim for workers' compensation benefits which she did on November 11, 2000. A notice (form EC-84) seeking information to complete the file and indexing the claim against Career Horizons, Inc., and listing claimant, her attorney and Health Force of New York Corporation as interested parties, was sent by the Workers' Compensation Board on December 13, 2000. A further notice (form EC-84.1) seeking information to complete the file and listing Health Force of New York Corporation as the employer and Career Horizons, Inc. as the workers' compensation carrier and a party of interest was sent February 15, 2001. Apparently, the Board received no response from these notices and filed a third notice (form EC-84.1) on March 23, 2001, seeking the same information it had previously requested from the same parties and adding American International Group (hereinafter AIG) as a party of interest.

On March 28, 2001, AIG Claims Service, Inc., a third-party administrator, filed a notice of controversy (form C-7), raising a number of issues in defense of the action, including noncoverage. A prehearing conference was scheduled for May 16, 2001 at which only claimant and her attorney appeared. The Workers' Compensation Law Judge (hereinafter WCLJ) penalized the "self-insured" for failing to file a preconference statement and directed the "self-insured care of AIG" to be present at the next hearing or have the case decided in "its" absence. The case was established at the next hearing on July 31, 2001, when the "carrier/employer" failed to appear and further penalties were assessed. When AIG formally appeared at the fifth hearing on January 11, 2002, its representatives indicated that AIG's failure to appear at the four previously scheduled hearings resulted from an internal problem in determining the need to appear and attempted to raise all the issues it raised in the C-7 filed in March 2001. The WCLJ did not allow AIG to raise any threshold issues, finding that the Board's records listed AIG as the third-party administrator for the self-insured employer, Career Horizons, that timely notice of the previous four hearings was given to the employer and AIG and that AIG's "sole remedy at this point" would be "to file an application for review with the . . . Board." The WCLJ proceeded to establish claimant's aver-

age weekly wage and directed AIG to issue benefit payments to claimant accordingly. Upon AIG's appeal, the Board affirmed the WCLJ's establishment of the claim based on AIG's failure to defend same, but remitted the case for further development of the record as to the appropriate responsible carrier.

In March 2002, CNA was identified by AIG as the workers' compensation carrier for claimant's employer. Although admitting as much, CNA argued that AIG—through its failure to appear and defend the claim, take a timely appeal from the WCLJ's decision establishing the claim and file a timely C-250— was estopped by the doctrine of laches from denying liability. The WCLJ agreed and, after finding that claimant was permanently partially disabled as a result of the established work-related injury, ruled that AIG continued to be liable for claimant's resulting benefits awards. The Board affirmed, and AIG now appeals from that part of its decision determining that AIG was estopped from denying coverage of the claim.

The doctrine of laches and estoppel apply to Board proceedings and a finding by the Board that estoppel lies in a particular case must be supported by substantial evidence (*see Matter of Tavano v Tavano Enters.*, 227 AD2d 836, 837 [1996], *lv dismissed* 88 NY2d 1018 [1996]; *Matter of Taylor v Vassar Coll.*, 138 AD2d 70, 73 [1988]). Whether the doctrines are to be applied depends on the facts of each case, which must establish the essential elements of estoppel (*see Matter of Ricciardi v Johnstown Leather*, 1 AD3d 661, 663 [2003]; *Matter of Taylor v Vassar Coll.*, *supra* at 73; *see also Matter of Hayden v S & W Meat & Poultry*, 221 AD2d 823, 824-825 [1995]).

Here, the Board found that CNA was effectively precluded from contesting the establishment of the case, causing it sufficient prejudice so as to estop AIG from contesting coverage. However, the Board did not address AIG's contention that CNA had timely notice of the claim by reason of the fact that CNA, as the workers' compensation and disability benefits carrier for the employer, received claimant's application for disability benefits a few days after the established accident occurred and suggested that claimant notify her employer, and obtain a C-3 form from the Board (*see Matter of Holloway v West St. Trucking*, 14 AD3d 816, 817 [2005]). Moreover, as the employer's workers' compensation carrier, CNA was deemed to have knowledge or notice of the claim because claimant filed a C-3 with her employer in November 2000 (*see* Workers' Compensation Law § 54 [2]; *Matter of Wilson v Chicago Bridge & Iron*, 2 AD3d 1004 [2003]). Additionally, CNA did file a C-7 in March 2002 after it received correspondence from AIG indicating that it was

the proper carrier. A C-250 filed at the same time would have preserved its right to obtain relief from the Special Disability Fund under Workers' Compensation Law § 15 (8) (d). Accordingly, since the Board made no express finding in regard to the record evidence suggesting that CNA had timely knowledge of the claim and the decision appealed from was based, at least in part, on the incorrect fact that claimant was employed by Career Horizons, a self-insured represented by a third-party administrator, and not Health Force of New York Corporation, which was insured by CNA (*see Matter of Evans v Jewish Home & Hosp.*, 1 AD3d 736, 738 [2003]), we conclude the Board abused its discretion in finding that AIG was estopped from contesting coverage (*see Matter of Ricciardi v Johnstown Leather, supra* at 662; *Matter of Schroeter v Grand Hyatt Hotel*, 262 AD2d 725, 726 [1999]).

Mercure, J.P., Spain, Mugglin and Kane, JJ., concur. Ordered that the decision is modified, without costs, by reversing so much thereof as ruled that AIG Claims Services, Inc. was estopped from denying coverage of the claim; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.